**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-60735-CIV-RUIZ/STRAUSS**

**TINA K. KAUFMAN**, *et al.*,

    Plaintiffs,

v.

**BANK OF AMERICA, N.A.**,

    Defendant.

_____/

**ORDER ON BANK OF AMERICA, N.A.'S ("DEFENDANT'S")
MOTION TO COMPEL RECORDS FROM
THE FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES ("DCF") (DE 50)**

**THIS CAUSE** is before the Court upon Defendant's Motion to Compel Records from DCF ("Motion to Compel"). (DE 50). Defendants' Motion to Compel seeks an order compelling DCF to produce records pertaining to its investigations of Florence R. Kaufman Wiener ("Deceased") for *in camera* review by this Court and subsequent publication to Defendant. The District Court referred for appropriate disposition all pretrial discovery motions ("Referral").[1] (DE 19). I have carefully reviewed the Motion to Compel and Response (DE 55)[2] and am otherwise duly advised. For the reasons set forth below, Defendant's Motion to Compel is **DENIED**.

---

[1] The Referral states that the parties may stipulate to extend the time to answer interrogatories, produce documents, and answer requests for admissions unless the stipulation interferes with other pretrial deadlines. (DE 19). The Referral also states that the parties shall not file written discovery motions without my consent. *Id.* Pursuant to the Discovery Procedures Order (DE 21), Defendant contacted my Chambers on January 12, 2021, the discovery period deadline as established by the District Court's paperless order amending scheduling (DE 35), requesting a hearing to resolve the instant discovery dispute. The undersigned directed Defendant to file a motion addressing the discovery sought, and the District Court granted (DE 52) Defendant's motion (DE 49) to enlarge the discovery deadline for the limited purpose of resolving the Motion to Compel. Accordingly, this Order solely addresses the Motion to Compel.

[2] Plaintiff's Response is an amended response to correct typographical errors. (DE 55 at n.1).

## I. BACKGROUND

The subject discovery dispute arises from a negligence claim against Defendant for allegedly breaching its duty to the Deceased by, *inter alia*, facilitating the exploitation of the Deceased by her caregivers, resulting in the caregivers improperly receiving more than $1.45 million upon her death. (DE 1-2; DE 31). On September 25, 2020, Defendant filed an Answer (DE 33) to Plaintiffs' Third Amended Complaint (DE 31) asserting fourteen affirmative defenses ("AD's"), including that: Defendant does not owe a duty to Plaintiff Tina Kaufman because the Deceased revoked her Power of Attorney (11th AD); Plaintiffs failed to mitigate their damages, specifically in that Plaintiff Tina Kaufman failed to exercise ordinary care with respect to her elderly mother's affairs (12th AD); and Plaintiffs are comparatively at fault for, among other things, failing to protect the Deceased by not taking action to terminate the services of the Deceased's caregivers (14th AD).

The parties have engaged in discovery. On October 15, 2020, Plaintiff's counsel served a privilege log disclosing the following documents for which it asserted privilege applied pursuant to Fla. Stat. § 415.107:

| No. | Date | Author | Recipient | Description |
|---|---|---|---|---|
| 8 | 10/21/2013 | Doriane Carrera | DCF Internal Report | Chronological Notes Report |
| 9 | 5/6/2014-6/3/2014 | Allison Hiller, Herman Matthew and Eneida Senrra | DCF Internal Report | Chronological Notes Report |
| 10 | 2/11/2014-3/27/2014 | Doriane Carrera | DCF Internal Report | Chronological Notes Report |
| 11 | 10/22/2013 | Doriane Carrera | DCF Internal Report | Chronological Notes Report |
| 12 | 3/27/2014 | Doriane Carrera | DCF Internal Report | Chronological Notes Report |
| 13 | 6/6/2014 | Matthew Herman | DCF Internal Report | Chronological Notes Report |

(DE 50-3). At least one of the above-listed DCF investigations is due to Defendant's own report to DCF dated May 5, 2014. (DE 50 at 2). Defendant asserts that Plaintiffs produced evidence that they made public records requests to DCF on July 25, 2017, pertaining to DCF incident reports #2014-119423, #2014-037126, and #2013-247890, but refused to produce these records pursuant to the privilege asserted. (DE 50 at 2-3; DE 50-2). At some point, Defendant sought the records directly from DCF, but, on December 18, 2020, DCF responded to Defendant's information request stating that, "pursuant to Florida Chapter 415," Defendant was not entitled to the information held by DCF. (DE 50 at 3; DE 50-4). Therefore, Defendant moves this Court for an order compelling production of the records for *in camera* review and, ultimately, publication to Defendant in accordance with Florida law. (DE 50 at 3).

Plaintiffs argue that the Defendant's Motion to Compel fails under Fla. Stat. § 415.107(3)(e), which governs disclosure of DCF records, because the records are not necessary to a specific issue before this Court, and "relevancy is not enough." (DE 55). Plaintiffs assert that the negligence claim pertains to negligence in a specific highly suspicious transaction – changing the beneficiary on over $1.8 million in current balances in favor of Decedent's caregiver – where Defendants failed to investigate or take action to protect against this allegedly wrongful change. *Id.* at 7. Plaintiffs argue that Defendant did not prompt DCF's investigation into this change of beneficiaries; rather, DCF was investigating the "mere transfer of $10,000 to five individuals" that had occurred earlier in the month. *Id.* According to Plaintiffs, the records from investigating such other incidents cannot be necessary to the resolution of the issue in this case regarding the change in beneficiaries on more than $1.8 million in balances. *Id.*

3

Plaintiffs additionally argue that Defendant has failed to properly narrow and tailor its records request to identify specific information that may be contained in the records that is tied to a legal issue that the Court must resolve. *Id.* (citing *Bogle v. Clifford Invs.*, LLC LEXIS 195030, at *13 (M.D. Fla. Sept. 2, 2015)). Plaintiffs argue that Defendant vaguely asserts that the information is relevant to Defendant's negligence and to apportionment of fault, without enough specificity to determine whether information in the DCF records would be necessary, e.g., not cumulative. *Id.* at 7-8. Specifically, Plaintiffs contend that information the Defendant seeks regarding the Deceased's living conditions and relationship with her daughter and her caregiver is too broad an inquiry. Further, Plaintiffs assert that Defendant errs by stating that "mental capacity" is an issue for the court to resolve because mental capacity relates to a specific action at a specific time and could not be relevant to the beneficiary change involving $1.8 million in balances because DCF did not investigate that incident. *Id.* Rather, according to Plaintiffs, vulnerability to influence is the central issue, and Defendant's employees have admitted facts relevant to a determination that the Deceased was a "Vulnerable Adult." *Id.* at 8, n.4.

Moreover, Plaintiffs argue that the timing of Defendant's Motion to Compel – coming on the last day of discovery despite the fact that Defendant had been aware for months that such records existed – is the best indication that the records are not actually necessary. (DE 55 at 11). Plaintiffs also assert that, at a status conference held by the District Court on December 23, 2020, Defendant reported that it was preparing its Motion for Summary Judgment but did not then raise a need for the DCF records. *Id.* Plaintiffs further contend that Defendant has not shown good cause to disrupt the trial schedule and that they will be prejudiced by Defendant obtaining DCF

4

records and then "cherry-picking facts" after the pre-trial motion cut-off deadline, presently set for January 26, 2021. (DE 55 at 11; DE 35).

I agree that Defendant's motion is insufficient to warrant the requested relief for the reasons stated below.

## II. **LEGAL STANDARDS**

Florida law governs whether a privilege exists in a diversity case such as this one. F.R.E. 501; *Rynd v. Nationwide Mut. Fire Ins. Co.*, No. 8:09-CV-1556-T-27TGW, 2010 WL 5161838, at *4 (M.D. Fla. Dec. 14, 2010) ("[S]tate law governs the existence of a privilege in a diversity case."). Fla. Stat. § 415.107(1) provides that "all records concerning reports of abuse, neglect, and exploitation of [a] vulnerable adult, including reports made to the central abuse hotline, and all records generated as a result of such reports shall be confidential . . . and may not be disclosed except as specifically authorized." Fla. Stat. § 415.107(1). The statute grants specific authority to persons, officials, and agencies, and states, in relevant part:

> (3) Access to all records, excluding the name of the reporter which shall be released only as provided in subsection (6), shall be granted only to the following persons, officials, and agencies: . . .
>
> > (e) A court, pursuant to s. 825.1035(4)(h) [involving injunctions for the protection of a vulnerable adult]; or by subpoena, upon its finding that access to such records may be necessary for the determination of an issue before the court; however, such access must be limited to inspection in camera, unless the court determines that public disclosure of the information contained in such records is necessary for the resolution of an issue then pending before it.

Fla. Stat. § 415.107(3)(e).

The parties agree that there are no cases interpreting the term "necessary" in this statute; however, courts have interpreted similar language in cases involving DCF child abuse

5

investigations.³  (DE 50 at 5-6; DE 55 at 5-6).  "Interpreting this language too broadly would mean that a litigant in a judicial proceeding could gain access to department records by having the court engage in a general search of all of the department's records in a matter."  *Silas v. City of Jacksonville Fla.*, No. 3:08-CV-854-J-25HTS, 2008 WL 5142917, at *1 (M.D. Fla. Dec. 5, 2008) (quoting *Elders v. State of Florida*, 849 So.2d 331, 332 (Fla. 2d DCA 2003) and rejecting Movants' request for the Court "to sift through potentially voluminous records" to identify records relevant to litigation involving a child's custody by DCF) (internal quotation marks omitted).

Thus, courts have interpreted "necessary" to "be more stringent than the relevancy standard in Rule 26."  *Urena v. Intex Recreation Corp.*, No: 6:19-cv-615-Orl-40EJK, 2019 WL 5596352, at *2 (M.D. Fla. Oct. 30, 2019) (citing *Bogle v. Clifford Investments, LLC*, No: 6:14-cv-670-Orl-22GJK, Doc. 89 at 9 (M.D. Fla. Sept. 2, 2015)).  Indeed, the plain language of the statute indicates that more than just relevance is required to justify disclosure of DCF records.  *See id.*  Accordingly, a movant must identify a particularized need by "articulat[ing] why the information sought is relevant, non-cumulative, and may be necessary for the resolution of a specific issue pending before the court."  *Id.*

### III.   ANALYSIS

Here, Defendant fails to explain why the records are necessary.  As described above, showing that records are "necessary" requires more than merely showing that they are relevant.  The term "necessary" implies that the particular records are crucial to determining the issue at

---

³ The relevant Florida statute in child abuse or neglect cases is § 39.202(2)(f), which authorizes access to DCF records to: "A court upon its finding that access to such records may be necessary for the determination of an issue before court; however, such access shall be limited to inspection in camera, unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then pending before it."  Fla. Stat. § 39.202(2)(f).

hand or contain especially important information that is unattainable elsewhere. Defendant asserts that it expects the DCF records to contain relevant information regarding the Deceased's mental capacity at the time she made changes to her accounts in May 2014. (DE 50 at 5). Defendant was aware that DCF conducted an investigation in May 2014 because it made a report to DCF that month. *Id.* at 6 ("[Defendant] made a report to DCF on May 5, 2014").[4] Defendant states, however, that this report was unrelated to the Deceased's capacity to make changes. *Id.* Rather, the report pertained to Defendant's inability to contact the Deceased to confirm transactions. *Id.* Defendant fails to explain how this investigation would bear on the Deceased's mental capacity in light of Defendant's own averment that it was instigated by an inability to reach the Deceased. As such, the documents are certainly not crucial because the documents pertain to matters outside the issue of mental capacity. Furthermore, if the investigation that Defendant prompted does not pertain to, and is not relevant to, the Deceased's mental capacity, then it follows that records from that investigation could not be "necessary." *Urena*, 2019 WL 5596352, at *2.

Additionally, Defendant fails to explain how or why DCF's records would bear upon, or be necessary to, determining the Deceased's mental capacity relative to the specific transactions, occurring on May 20, 2014, that are the subject of the lawsuit: 1) revocation of Plaintiff Tina K. Kaufman as Power of Attorney; and 2) a change to the payable upon death designation from Plaintiff Tina K. Kaufman to the paid caregiver on over $1.4 million in addition to safety deposit box valuables ("Contested Transactions"). *Id.* (referencing the Third Amended Complaint at ¶ 16). Defendant does not assert that the DCF's records include information about the Deceased's mental

---

[4] The privilege log indicates a DCF investigation that started on May 6, 2014, two days after Defendant made its report related to an inability to contact the Deceased, which continued until June 3, 2014.

7

capacity nor that it cannot otherwise obtain information that relates to Decedent's mental capacity when she authorized the Contested Transactions.

Defendant presumably has investigated and taken deposition testimony of witnesses to the Deceased's conduct at the time the Deceased made the changes. Indeed, Defendant describes evidence it has already gathered regarding the Deceased's mental capacity in its Motion to Compel. (DE 50 at 5-6). Therefore, Defendant has not established that the DCF records would not be cumulative, and thus unnecessary, even if there was DCF interaction with the Deceased at the time she authorized the Contested Transactions.

Moreover, instead of a narrowly tailored request targeted to a specific issue to be resolved by this Court, Defendant seeks the Court to undertake a generalized review of the DCF records to determine if there is anything that is relevant to the Deceased's mental capacity at the time the Deceased made changes to her accounts on May 20, 2014. A request for such a generalized search for records that may be relevant to the defense in this case is insufficient to warrant this Court's issuance of a subpoena for an *in camera* inspection of DCF's records because it requires an overly broad interpretation of necessity. *See Elders*, 849 So.2d at 332.

Defendant also seeks information regarding others who may have exploited the Deceased and references a transaction in September 2013 that was the subject of a memorandum written by the Deceased's former counsel involving Plaintiff Tina K. Kaufman and the Deceased's nephew. (DE 50 at 9-10). Defendant contends that such information is relevant to the issue of comparative fault and whether Plaintiffs mitigated their damages. *Id.* Defendant does not state any other specific incidents of suspected exploitation or whether the September 2013 incident was reported to DCF. Defendant also fails to explain why information regarding other potential exploiters of

8

the Deceased is unavailable from other sources, including bank records from which Defendant could directly trace funds flows from the Deceased to others.

While information in the DCF records *could possibly* include information about individuals that *might have* exploited the Deceased, which may be relevant to Defendant's defense, relevance is not the standard. Rather, the standard is more stringent and requires Defendant to articulate why the records are necessary such that Defendant cannot otherwise obtain information that is critical to its defense. Here, Defendant provides nothing to show that the DCF records are even expected to include the information that the Defendant seeks let alone explains why other sources for this information are unavailable or insufficient. Thus, Defendant's records request is not tailored to the resolution of a specific issue pending before the court. Rather, Defendant's speculation about what records might exist regarding other possible exploiters requires the Court to interpret "necessary" in an overbroad manner. *Elders*, 849 So.2d at 332. Defendant's request would have the Court undertake a generalized review of DCF's records, to determine if there is anything that is relevant to Defendant's affirmative defenses and is insufficient for this Court to grant the relief requested.

Defendant further asserts a belief that the DCF records may describe the relationship that the Deceased had with her daughter, Plaintiff Tina K. Kaufman, and what, if any role, Plaintiff Kaufman had in caring for her mother. *Id.* at 10. Again, information about such topics may very well be relevant, but Defendant fails to demonstrate that it is crucial or unavailable through other sources (like depositions of Plaintiff Kaufman and others). Like the request to explore whether DCF's records indicate that others exploited the Deceased, Defendant requests the Court to go through "potentially voluminous records" to determine if there is anything describing the

9

Deceased's relationship with her daughter that is relevant to Defendant's affirmative defenses of comparative fault and failure to mitigate damages. Presumably, Defendant has conducted depositions and has taken the testimony of individuals that are knowledgeable of such matters, and Defendant fails to explain how the DCF records would not be cumulative. Therefore, I find Defendant's request fails to justify relief.

Moreover, Defendant's delay in requesting the DCF records, when it knew by its own report in May 2014 that DCF investigative records existed, belies any assertion that these records are necessary, especially coming on the day that discovery, after being twice extended, ended. *See* DE 14 (setting discovery deadline as November 16, 2020); DE 19 (re-setting discovery deadline as December 29, 2020); DE 35 (re-setting discovery deadline as January 12, 2021).

## IV.    CONCLUSION

Accordingly, for the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the Motion to Compel (DE 50) is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of January 2021.

Copies furnished counsel via CM/ECF

*[signature]*
Jared M. Strauss
United States Magistrate Judge